**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| JJM, LLC, | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| *ONE SHIPWRECKED VESSEL* | ) | Civil Action |
| her engines, | ) | Docket No.: 1:24-cv-00072-NT |
|     *boilers, tackle,* | ) | |
|     *appurtenances,* | ) | |
|     *cargo, and her* | ) | |
|     *other equipment, etc.,* | ) | |
| | ) | |
|     *in rem*, | ) | |
| | ) | |
|     Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO THE STATE OF MAINE'S**
**MOTION TO UNSEAL NAME OF VESSEL**

**I.     INTRODUCTION**

Due to the location Defendant Vessel's (the "Wreck" or "Vessel") site and the circumstances of its sinking, the State of Maine's proposed action will lead to the looting of personal artifacts in contravention of the intent of salvage law in general, and the Abandoned Shipwreck Act specifically. Furthermore, the depth of the site could pose a dangerous temptation to inexperienced divers, putting lives at risk. Although made in the spirit of public transparency, the State's proposed action would be an abrogation of its statutory duty to protect the integrity of the historic artifacts within the wreck site. For those reasons, Plaintiff respectfully opposes the State's motion.

**II.     ARGUMENT**

1

The State relies on *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022), for their contention that this particular case does not carry the hallmarks of "exceptional" litigation that justify maintaining anonymity of one of the parties. At the outset, Plaintiff rejects that statement because litigation surrounding shipwrecks, particularly in Maine, is rare in the 21st Century given the scope of the Abandoned Shipwreck Act. Further, the First Circuit's guidance in *Doe* actually supports Plaintiff's position that the name of the Wreck should remain under seal.

Whether anonymity should be maintained is based on the "totality of the circumstances." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 70 (1st Cir. 2022). "District Courts enjoy broad discretion to identify the relevant circumstances in each case and to strike the appropriate balance between the public and private interests." *Id.* In *Doe v. Massachusetts Institute of Technology*, the 1st Circuit identified four specific scenarios in which anonymity would be warranted, noting however that "[c]ivil actions come in a wide variety of shapes and sizes, and we are not so sanguine as to believe that these four paradigms capture the entire universe of cases in which pseudonymity may be appropriate. *Id.* at 72. Yet, one of those four scenarios specifically contemplated "cases in which identifying the [anonymous party] would harm 'innocent non-parties.'" *Id.* at 71. As discussed more thoroughly below, the harm to non-parties is a genuine threat in this case.

Under the Abandoned Shipwreck Act ("ASA"), 43 U.S.C. § 2101 *et seq.,* the United States asserts title to any abandoned shipwreck that is embedded in submerged lands of a state, embedded in coralline formations protected by a state on submerged lands of a state, or on submerged lands of a state and included in or determined eligible for inclusion in the National Register of Historic Places. *Northeast Research, LLC v. One Shipwrecked Vessel*, 729 F.3d 197, 207 (2d Cir. 2013). Title to such shipwrecks is then automatically transferred to the state in whose submerged lands

the shipwreck is located. *Sea Hunt v. Unidentified Shipwrecked Vessel*, 221 F.3d 634, 640 (4th Cir. 2000).

The ASA reflects Congress's judgment that states are the best guardians of abandoned wrecks found in their waters and that a policy of settling ownership of such shipwrecks with states promotes the best interests of the public. *Northeast Research, LLC*, 729 F.3d at 197; 43 U.S.C. § 2103(a)(2)(c). This policy includes the appropriate recovery of artifacts to protect historical values and the integrity of the shipwrecks and their sites. *Id.*

While the ASA requires that the public be given adequate notice of the location of any shipwreck to which title is asserted under the Act, disclosure must be weighed against protecting the historical and environmental integrity of the shipwrecks and their sites. The statute speaks directly to this balancing of interests:

> [I]t is the declared policy of the Congress that States carry out their responsibilities under this Act to develop appropriate and consistent policies so as to—
> (A) protect natural resources and habitat areas;
> (B) guarantee recreational exploration of shipwreck sites; and
> (C) allow for appropriate public and private sector recovery of shipwrecks consistent with the protection of historical values and environmental integrity of the shipwrecks and the sites.

43 U.S.C. § 2103 (a).

The State argues that "[t]here is no compelling reason to maintain the *in rem* defendant's anonymity during the pendency of an administrative eligibility determination proceeding or this judicial proceeding." (State's Mot. Unseal 4.) However, admiralty courts have long recognized the enticing nature of artifacts from vulnerable wreck sites. *Fathom Exploration, LLC v. The Unidentified Shipwrecked Vessel Or Vessels*, 352 F. Supp. 2d 1218; ("Indeed, it is easy to envisage a feeding frenzy of competing salvors and claimants swarming around a shipwreck site, each working at cross-purposes to the others to seize artifacts from the site as quickly as possible,

3

creating a chaotic, disorganized atmosphere in which important artifacts may be damaged and significant archeological or historical information may be lost forever."). Because of this, Courts have imposed a duty of care to preserve the "province data" of the site by "mapping or recording the location, depth and proximity of each artifact recovered in relation to the other artifacts." *MAREX Int'l v. Unidentified, Wrecked & Abandoned Vessel*, 952 F. Supp. 825, 829 (S.D. Ga. 1997). The State of Maine's proposed action would spark the same feeding frenzy other admiralty courts have sought to avoid prior to the completion of such mapping.

### A. The location of wreck site is easily identifiable with the name.

To determine whether a name should remain under seal, the Court "should balance the interests asserted by the movant in favor of privacy against the public interest in transparency, taking all relevant circumstances into account." *Doe v. Mass. Inst. of Tech.*, 46 F.4th at 73. "[T]he district court should require a declaration or affidavit either by the moving party or someone with special knowledge who can speak to the need for anonymity in that case" if it should conclude that anonymity should be maintained. *Id.*

Plaintiff asserts that the safety of the public should be regarded as of the utmost importance when considering the anonymity of this wreck. The public is highly interested in this case, as demonstrated by news articles issued just weeks after the Complaint was filed in this case.[1] Further,

---

[1] *See*, *e.g.*, Bill Trotter, *Company Seeks Ownership of more than 100-year-old Shipwreck off Bar Harbor*, BANGOR DAILY NEWS (March 20, 2024), https://www.bangordailynews.com/2024/03/20/hancock/hancock-environment/shipwreck-salvage-attempt-bar-harbor/; Emily Allen, *Wanted for Arrest: One Mysterious Sunken Vessel off the Coast of Maine*, PORTLAND PRESS HERALD (March 20, 2024), https://www.pressherald.com/2024/03/20/wanted-for-arrest-one-mysterious-sunken-vessel-off-the-coast-of-maine/#:~:text=Local%20%26%20State-,Wanted%20for%20arrest%3A%20One%20mysterious%20sunken%20vessel%20off%20the%20coast,it%20can%20salvage%20the%20wreckage.

Plaintiff's designated expert has provided an affidavit that describes, in detail, the dangers of revealing the name of Defendant Vessel to the public.[2]

The circumstances of the sinking of this Vessel are well documented and publicly available online. To demonstrate that risk, before being told the location of the vessel, Plaintiff gave its expert only the two possible names of the Vessel. The expert performed two searches for the location; the first was a simple Google search, and the second was using the Automated Wreck and Obstruction Information System ("AWOIS") database, which is the national database of submerged wrecks in the coastal waters of the United States. Affidavit of Richard Simon, dated February 28, 2025, ¶ 20 (attached hereto as **Exhibit A**). The Google search led the expert to the wreck site within seconds. *Id.* ¶ 21. The AWOIS search also led the expert to the site within seconds. Because these readily available online documents discuss the circumstance of the Vessel's sinking, the name of the Vessel (whichever name the Court picks) is inextricable from its location. *Id.* ¶ 24. The ease with which Plaintiff's expert was able to pinpoint the Wreck's location using a simple Google search underscores the potential for the public to do the same.

### B. The Wreck itself is not special, but it does contain personal items that belong in a museum, not on a mantel.

The State's investigation has confirmed the presence of a large number of granite pavers at the wreck site. The submersible operated by the State's expert also found several personal items such as teacups and plates. While the wreck itself is one of dozens along the Maine coast, these personal items carry their own significance because they connect a people with their seafaring past. *Id.* ¶¶ 10-11. This Vessel is a type of schooner that is still regularly seen off Maine's coast and can be experienced by tourists and the public in real time and in person, further highlighting the fact

---

[2] Plaintiff's expert has not issued his full report because he cannot investigate the site until dive conditions improve. Plaintiff and its expert estimates that his investigation can occur sometime in April 2025.

that any potential public value does not come from the ship itself nor its cargo, but only from the personal items that may be scattered among the Wreck site. Even then, Plaintiff believes that the true value of the Wreck is not historical, but monetary, thus emphasizing the likelihood that inexperienced individuals will attempt to salvage the Wreck before either Plaintiff or the State has the opportunity to conduct proper inventory and preservation procedures.

Commercial and technical divers are specially trained to document wreck sites and recover items for the purposes of preservation and historical interpretation. *Id.* ¶¶ 6-7. Unfortunately, not everyone shares this ethic. Wreck sites up and down the New England coast have been pillaged by recreational divers looking for conversation pieces for their mantels and offices. In general, the closer a wreck is to shore, the more likely it will be pillaged by souvenir divers. *Id.* ¶ 15. The location of this site makes it especially vulnerable. *Id.* ¶ 16. These items and their locations should be documented and recovered by a professional, not picked apart by hobbyists looking for a conversation piece. The State of Maine's proposed action puts these artifacts at risk.

**C. The State's proposed action could put inexperienced divers at risk.**

SCUBA Diving is a fun sport open and accessible to almost everyone. However, the deeper the dive, the greater the risk of injury or death. Until these artifacts are documented and recovered, the location and contents of the site could prove attractive to recreational divers. The depth of the Wreck is at the upper limits for recreational divers. Plus, the conditions at the site could prove deadly as inexperienced divers attempt to reach and navigate a complicated and dark shipwreck site. *Id.* ¶ 18.

The fact that the State is "not aware of any specific, credible threats to the *in rem* defendant or its cargo or artifacts" (State's Mot. Unseal 4) does not mean those threats do not exist. It would be unreasonable to assume that bad actors with intent to pillage a wreck site would announce their

plans prior to their undertaking. Nor does JJM's custodianship and jurisdiction of this Court serve as guaranteed deterrent. The State's ability to conduct an investigation without raising any suspicion as to the location of the Wreck site is a testament to the possibility that determined individuals could conduct their own reconnaissance and recovery without anyone's knowledge, and without the availability of emergency assistance in the event something goes terribly wrong.

### D. What name shall we unseal?

The State's expert has proposed a name of the Vessel that is different than the one currently under seal with the Court. Plaintiff has not conceded that the State's proposed name is the actual name of the vessel and so at this stage of the case, the name of the Vessel is a disputed fact. Publishing the name of the Vessel that is under seal would mean publishing the wrong name of the Vessel, at least according to the State's expert.

It is not credible to argue that an interested party's search for this Vessel is frustrated for want of the public disclosure of its name in this case. The name that is currently under seal, the State's proposed name, and the circumstances of the sinking are all in the public record.[3] Anyone with an interest in the vessel would already know the name and the circumstances of her loss. Disclosure in this case would add no value to such a search.

## III. CONCLUSION

Regardless of its status under the ASA or subjective beliefs of the parties, U.S. admiralty law vests all parties to this matter with a duty to preserve the historic value of this site. The State of Maine's desire to unseal the name of the Vessel in furtherance of public transparency is certainly legitimate. However, the interests of transparency must be weighed against the duty to protect the

---

[3] What is not in the public record is a connection between the name of the Vessel and the fact that Plaintiff recognizes a commercial opportunity to recover her cargo. Unsealing the name at this point would allow the public to connect the location of the vessel with the potential value of its contents.

historic information contained in the site until its contents can be documented, mapped, and recovered. With documents discussing the circumstances of her sinking publicly available, disclosure of her name would render this schooner easy pickings for souvenir hunters and could result in the loss of the historic information contained within this site forever. It could also lead to injuries – or even death – to those who attempt to explore the Wreck without proper training. Additionally, there is nothing preventing the public from following along with this case through the court filings that are already available and will continue to be available. Plaintiff respectfully submits that the safety of the public and interest of preserving historic information outweigh the State's interest in transparency at this stage and therefore, in light of the totality of the circumstances, the Court should deny the State's Motion.

      DATED at Portland, Maine, this 13 day of March, 2025.

s/ Benjamin E. Ford, Esq.
Benjamin Ford, Esq.
Twain Braden, Esq.
Grayson P. Szczepaniak, Esq.
Attorneys for Plaintiff JJM, LLC

**ARCHIPELAGO LAW, LLP**
1 Dana Street
Portland, ME 04101
(207) 558-0102
bford@archipelagona.com
tbraden@archipelagona.com
gszczepaniak@archipelagona.com