UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

Civil Action
Docket No.: 1:24-cv-00072-NT

JJM, LLC,

    Plaintiff

v.

*ONE SHIPWRECKED VESSEL*
    *her engines,*
    *boilers, tackle,*
    *appurtenances,*
    *cargo, and her*
    *other equipment, etc.,*

    *in rem*,

    Defendant.

## AFFIDAVIT OF RICHARD SIMON

I, Richard Simon, President of Shoreline Scuba Services, Inc., d/b/a Shoreline Diving, do hereby depose and affirm as follows:

1. I have been retained by Plaintiff, Salvor-in-Possession, JJM, LLC, to provide expert services related to the underlying dispute with the State of Maine ("State"). I anticipate visiting the site and drafting a report consistent with this Court's Scheduling Order.

2. I have reviewed the State's Motion to Unseal the *in rem* Defendant's Name (ECF Doc. # 43).

3. I strongly disagree with the State's contention that there is "no compelling reason" to maintain the anonymity of the subject abandoned and submerged wreck ("Wreck") to the public.

1

4. I am the president of Shoreline Diving in Coventry, Connecticut. Shoreline Diving provides commercial diving services to clients including the United States Navy, Amtrak, and regional water utilities.

5. I currently hold certifications for recreational, archeological, commercial, and technical diving.

6. Among the training requirements for a commercial and technical diving certification is instruction on the documentation and preservation of the data contained within wreck sites. Commercial and technical divers are also trained on the legal and ethical standards for the retrieval and display of artifacts.

7. As commercial and technical diver, I have explored several wreck sites in New England waters. I have also located wreck sites with significant historic value including the wreck of the *Defender*, an early 20th century submarine that was lost after being scuttled in Long Island sound.

8. My work also involves recovering and displaying historical artifacts from wreck sites. This practice involves close partnerships with museums, historians, and marine archaeologists. The artifacts I recover have significant monetary value, but they have even more significant historical value as they are a link between a people and their seafaring past.

9. There is an important distinction between identifiable human objects such as tea cups and plates, and bulk cargo. Personal objects have important historical value. Whereas a bulk of granite pavers do not, beyond the very fact that this part of the coast of Maine was an important source of granite for the building of early American cities. Recovery and display of the personal items tells a powerful story about the history of this place. The display of a sample of granite pavers would add to that story. But nothing would be gained by the display of all of the granite

pavers contained in the wreck site. Because of this in my opinion, the pavers can be recovered and sold without any loss of historic value.

10. While I adhere to the highest standards of professionalism and respect for the historical record, leaving important artifacts *in situ*, is not the norm, especially when those items can be easily looted by souvenir divers.

11. Unfortunately, I have seen several wreck sites looted and pilfered by divers who do not share the same values, training, and commitment to historical interpretation. As the recovered artifacts are either hoarded or sold, the data contained within these wreck sites is lost to history forever.

12. In my experience, the closer a wreck site is to the shore the more likely it will be pillaged by souvenir divers. This is especially true if the wreck is at a depth not requiring a technical dive.

13. I have reviewed the report provided by the State's expert as well as the photographs contained therein. The State's expert was able to locate and identify several items including teacups and plates that would be very attractive to souvenir divers.

14. The proximity of this wreck to the shore makes it especially susceptible to looting. However, the depth of the wreck would present a serious and dangerous attraction to less experienced divers. As a result, people may be injured or killed in attempting to recover these artifacts.

15. The circumstances of the sinking of this vessel are documented such that if a member of the public is given the name of the vessel, they can easily determine its location.

16. After being told of the name of the Vessel, but prior to being told of the location, I performed two searches for its location, the first was a simple Google search and the second was

using my Automated Wreck and Obstruction Information System ("AWOIS") database, which is the national database of submerged wrecks in the coastal waters of the United States.

17. A Google search led me to the location within seconds.

18. An AWOS search also led me to the location within seconds.

19. The location of the Wreck – which I cannot describe further in this public document but which I could describe further in a sealed hearing – is therefore inextricable from the circumstances of its sinking.

20. The words describing the demise of the vessel in the latter part of the 19th Century as described in documents from both my searches would lead any amateur wreck diver to within a few hundred yards of the Wreck site. More sophisticated divers, such as myself and some of my colleagues, could narrow the search even further.

21. There is also an important distinction between historically *interesting* personal items such as tea cups and plates or other pottery and historically *significant* wreck sites. Items that our predecessors touched will almost always be found interesting, as they can teach us about our past, even though those items came from a schooner that itself was relatively insignificant. I mention this issue now to counter any argument as to the historical significance of the wreck itself. I plan to expand further on this issue in my full report.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

/S/ Richard Simon     Date: March 14, 2025
Richard Simon