UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JJM, LLC,<br><br>    Plaintiff<br><br>v.<br><br>*THE ABANDONED AND SUBMERGED VESSEL, DELHI*<br>    her engines, boilers, tackle, appurtenances, cargo, and her other equipment, etc.,<br><br>    *in rem*,<br><br>    Defendant. | Civil Action<br>Docket No.: 1:24-cv-00072-JCN |

## DECLARATION OF CONNOR MCBRIAN

1. I am over eighteen years of age. This declaration is based on my personal knowledge.

2. I am currently employed as a maritime archaeologist. I received a graduate diploma in maritime archaeology from Flinders University in Australia.[1] A true and accurate copy of my complete curriculum vitae is attached as part of Annex 3 to the Maritime Archaeological Assessment, described in more detail below in paragraph 8.

3. Since 2018, I have worked as a maritime archaeologist for Cosmos Archaeology Pty Ltd, which is a cultural heritage consultancy specializing in maritime and underwater archeology primarily providing archeological support for large infrastructure projects across Australia and the Asia-Pacific region.

4. I have extensive training and experience in maritime archaeology. To wit, in

---

[1] An Australian graduate diploma is the equivalent of a master's degree from an American university.

addition to my formal education, in my position with Cosmos Archaeology, I have managed approximately a couple dozen maritime archaeological projects, which include, for example, shipwrecks, aircraft wrecks, maritime infrastructure, and submerged terrestrial landscapes.

5. In May 2024, the Maine Historic Preservation Commission contacted me about developing a research methodology for surveying the shipwreck (later determined to be the *Delhi*) that is the subject of this litigation. Based on my submission, the Office of the Maine Attorney General retained me to direct a field survey of the shipwreck and to provide an expert report.

6. I was also asked to conduct historical research to identify the nature of the shipwreck and to offer my opinion regarding whether it met the conditions of the Abandoned Shipwreck Act, specifically if it is embedded in the submerged lands of the State of Maine and if it could be eligible for listing on the National Register of Historic Places.

7. To conduct the field survey, I arranged for assistance from a team operating from the University of Maine, Darling Marine Center, because the team from the University had a remotely operated vehicle ("ROV") that could be used to conduct the underwater survey.

8. The team from the University and I conducted the field survey of approximately fourteen total hours on the wreck with the ROV on September 13 and 14, 2024. Following the completion of the survey, I authored a comprehensive Maritime Archaeological Assessment based on what I learned from the field survey and the historical research I conducted. A true and accurate copy of the Maritime Archaeological Assessment I wrote, dated November 11, 2024, is attached hereto as <u>Exhibit 1</u>. I was deposed by counsel for JJM, including on the contents of Exhibit 1. If called to testify at trial, I would testify to and affirm the contents of Exhibit 1—other than Annex 1, which is an ROV Survey Report authored by the University team—based on my own personal knowledge, research, and interpretation of that research.

9. In June 2025, I authored Annex 4 to the Maritime Archaeological Assessment, which is an analysis of shipwreck excavation case studies. A true and accurate copy of the June 2025 Annex 4 is attached hereto as <u>Exhibit 2</u>. The purpose of Annex 4 is to give a brief overview of the technical requirements needed to raise a historic shipwreck from its underwater environment to the surface, to give a better understanding of what would be required to raise the *Delhi* from its location on the seabed. If called to testify at trial, I would testify to and affirm the contents of Exhibit 2 based on my own personal knowledge, research, and interpretation of that research.

10. During my historical research, I reviewed a number of widely accepted archives in the maritime archaeology community that store important primary-source records such as old newspaper articles, ship registers, and more.

11. One document I relied on that I pulled from such an archive is the April 20, 1893 *Ellsworth American* article that describes the wreck of the *Delhi* in ▮▮▮▮▮▮, available at https://digitalmaine.com/ellsworth_american/1461. The retrievable article is in a condition that does not give me any suspicion about its authenticity; was in a place where, if authentic, I would expect to find it; and is at least 20 years old. A true and correct copy of the article I obtained from this digital archive is attached hereto as <u>Exhibit 3</u>.

12. Another document I relied on that I pulled from such an archive is the *Record of American and Foreign Shipping, 1872-1893*, specifically the 1873 edition, published by the American Shipmasters' Association, New York, and digitized by the Mystic Seaport Museum, Collections and Research at: https://research.mysticseaport.org/ships/?post_type=mystic_items. The retrievable ship register is in a condition that does not give me any suspicion about its authenticity; was in a place where, if authentic, I would expect to find it; and is at least 20 years old. A true and correct copy of the relevant excerpt of the ship register I obtained from this digital

3

archive is attached hereto as Exhibit 4.

13. Another document I relied on that I pulled from such an archive is the *Lloyd's Register of British and Foreign Shipping: Returns of Vessels Totally Lost, Condemned, &c., 29th July, 1893*, and digitized by Lloyd's Register Foundation Heritage & Education Centre and the Internet Archive at: https://lloyds-production.s3.amazonaws.com/_file/general/1893-casualty-returns.pdf. The retrievable ship register is in a condition that does not give me any suspicion about its authenticity; was in a place where, if authentic, I would expect to find it; and is at least 20 years old. A true and correct copy of the relevant excerpt of the ship register I obtained from this digital archive is attached hereto as Exhibit 5.

14. Based on my education, training, professional experience, the field survey, the historical research I conducted, and the analysis of the excavation of nine comparable shipwrecks, I reached a number of conclusions, including the notable ones that follow.

15. Based on the predicted patterns of site formation described in the Maritime Archaeological Assessment, assessed against the results of the field survey, I conclude that the *Delhi* represents a large-tonnage, wooden-hulled sailing vessel.

16. The field survey identified that portions of the wreck, such as the timber sternpost and frames, were present above the seabed surface, along with cargo and other artifacts. However, the interior of the wreck was mostly filled with sediment, obscuring both the floor frames and the keel and keelson of the vessel. The keel and keelson especially are substantial large timbers that form the spine and primary longitudinal support for the vessel. Considering the height of the sternpost identified during field surveys was approximately 2 meters off the seabed, while the original height of the vessel was closer to 4 meters, I conclude that a portion of the base of the sternpost is buried in the seabed. The bottommost portion of the sternpost would include numerous

supporting timbers, called sternsons, knees, or deadwood, further connecting the sternpost to the keel. These were not seen during surveys, leading to the conclusion that they are buried under the sediments. Based on my education, training, professional experience, and the field survey described above, it is my opinion that the shipwreck *Delhi* is embedded, as that term is used in the Abandoned Shipwreck Act, in the submerged lands of the State of Maine.

17. Although the upper decks, deckhouse, and vessel superstructure were not seen, substantial structural elements were assessed to be largely intact. These elements consisted of the sternpost, frames, and outer hull planking. (See pictures that follow.) Although the keel and keelson were not seen, based on their condition and level of preservation of the visible timbers, I conclude that these elements would have survived and are buried under the seabed. The deep protected nature of the site location, as well as the cold water temperature, has likely aided in the preservation of the wooden timbers.

18. The following are true and accurate copies of pictures of notable features identified in the preceding paragraph that the University team and I took of the shipwreck with the camera on the ROV. The first picture is of the sternpost, the second picture is of frame and outer hull planking on the starboard side of the vessel, and the third picture is of outer hull planking on the starboard side of the vessel where the hull meets the seabed.







19. Were it economically viable, it is possible that the cargo and possibly the entirety of the *Delhi* could have been recovered from ▮▮▮▮▮▮ in the 1890s.

20. For each of the nine case studies contained in Annex 4, tools of excavation were used to excavate the historic shipwreck or abandoned vessel. Commonly used tools of excavation include hand tools, airlift, water dredge, water jet, chainsaws, and lifting equipment (e.g., cranes, capstans, winches).

21. Based on my firsthand knowledge of the shipwreck *Delhi*, my conclusion that parts of the *Delhi* are buried in the mud, and taking into consideration the analysis of case studies contained in Annex 4, it is my conclusion that it would be next to impossible to fully excavate the remains of the *Delhi*, and all its associated hull elements and artifacts, by hand without extensive use of the "tools of excavation," such as water dredges, water jets, hand tools, underwater chainsaws, and some lifting apparatus such as a crane.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 17, 2025.

                /s/ Connor McBrian
                Connor McBrian
                Kingscliff, Australia